UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GEORGE GLEN WHITAKER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | No.: 3:08-CV-411 |
| ) | (VARLAN/SHIRLEY) |
| THOMAS M. KOENIG and ) | |
| ANNA M. KOENIG, ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM OPINION

Appellant George Glen Whitaker has appealed the United States Bankruptcy Court for the Eastern District of Tennessee's (the "Bankruptcy Court's") Memorandum Opinion [Doc. 1-12] entitling Appellees Thomas M. Koenig and Anna M. Koenig to a judgment against appellant that is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). Appellant argues in his Brief of Appellant [Doc. 5] that the Bankruptcy Court erred in finding that appellees were entitled to judgment under §§ 523(a)(2)(A) and (a)(6), and in permitting appellees to recover on facts and theories that they did not plead. Appellees contend in their Brief of Appellees Thomas M. Koenig and Anna Marie Koenig [Doc. 7] that the Bankruptcy Court was correct in finding the judgment at issue to be nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(6). In his Reply Brief of Appellant [Doc. 8], appellant contests several purported oversights and irrelevancies in appellees' brief.

The Court has carefully reviewed the parties' briefs in light of the entire record and controlling law. For the reasons set forth below, the decision of the Bankruptcy Court will be affirmed.

## I. Procedural History

On November 20, 2007, appellees filed a Complaint with the Bankruptcy Court [*See* Docs 1-1, 1-17]. On June 25, 2008, appellees filed a Motion to Amend Complaint [*See* Docs. 1-4, 1-17 ], to which appellant objected on July 8, 2008 [*See* Docs. 1-7, 1-17 ]. On July 10, 2008, the Bankruptcy Court denied appellees' motion to amend [*See* Docs. 1-9, 1-17]. On August 27, 2008, the Bankruptcy Court awarded a nondischargeable judgment to appellees in the amount of $45,000.00 plus prejudgment interest [*See* Docs. 1-11, 1-17]. The Bankruptcy Court then issued a memorandum opinion setting forth the reasons for its judgment on September 15, 2008 [*See* Docs. 1-12, 1-17].

Appellant filed a Notice of Appeal on September 5, 2008 [*See* Docs 1-14, 1-17]. The parties have since submitted briefs in support of their respective positions. The matter is now ripe for the Court's consideration.

## II. Relevant Facts[1]

Appellant operated a construction business as a sole proprietorship until August 2005 when he incorporated Glen Whitaker Building Company, Inc. ("GWBCI"). Appellant was the president and sole shareholder of GWBCI, and was in personal control of GWBCI

---

[1] These facts, unless otherwise indicated, were stipulated to by the parties as undisputed [Doc. 1-10].

2

throughout 2005 and 2006. GWBCI has never filed a federal income tax return. On August 20, 2007, appellant filed a Chapter 7 Voluntary Petition. On August 21, 2007, appellant filed a Certificate of Administrative Dissolution of GWBCI with the Secretary of State for the State of Tennessee.

Appellees entered into a residential construction contract (the "contract") with GWBCI dated January 23, 2006, for the construction of a home on Beals Chapel Road in Loudon County, Tennessee (the "building site"). On March 3, 2006, appellees made a $60,000.00 payment pursuant to the terms of the contract. On May 18, 2006, appellant requested a second $60,000.00 payment from appellees. Appellant told one or both appellees that there were large upcoming expenses, and that he needed the monies to pay for materials and/or to pay subcontractors on appellees' project. Appellees made the second $60,000.00 payment, which was deposited in GWBCI's checking account on May 19, 2006. GWBCI did not enter into any new contracts for residential construction on or after May 1, 2006.

On or about October 13, 2006, some months after appellant told appellees that he would not be able to complete the construction of their home at the building site, appellees filed a complaint in Knox County Chancery Court seeking recovery from GWBCI and appellant. On or about March 15, 2007, appellees and appellant agreed to a continuance of the Chancery Court trial date, and a 90-day stay of discovery, in return for a payment of $15,000.00 from appellant to appellees. The parties agreed that this payment would apply to any debt of appellant and/or GWBCI to appellees which might be determined to be

3

nondischargeable in bankruptcy. The Chancery Court lawsuit was thereafter scheduled for trial on August 23, 2007.

At his August 14, 2007 deposition taken in connection with the Chancery Court case, appellant testified that, when he received the second $60,000.00 payment from appellees, he was "paying the supplier that yelled the loudest." In addition, at the October 19, 2007 meeting of creditors, appellant testified that (a) his construction business of twenty years was "going down the tubes" in the spring of 2006, by which he meant February and March 2006; (b) he had no clue what percentage of the appellees' project was complete at the time he requested the second $60,000.00 payment from appellees; and (c) no work was done by GWBCI at the building site after receipt of the second $60,000.00 payment on May 19, 2006.

## III.  Standard of Review

The bankruptcy court makes the initial findings of fact and conclusions of law. *WesBanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.)*, 106 F.3d 1255, 1259 (6th Cir. 1997). This Court then reviews the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law *de novo*. *Id.* (citing Fed. R. Bankr. P. 8013) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## IV.  Analysis

Appellant raises three arguments in his brief. First, he argues that the Bankruptcy Court erred in finding that appellees were entitled to judgment under 11 U.S.C. § 523(a)(2)(A). Next, he argues that the Bankruptcy Court erred in finding that appellees were entitled to judgment under 11 U.S.C. § 523(a)(6). Finally, appellant argues that the Bankruptcy Court erred in permitting appellees to recover on facts and theories that they did not plead.[2] The Court considers each of these arguments in turn.

### A. Whether the Bankruptcy Court Erred in Finding that Appellees Were Entitled to Judgment Under 11 U.S.C. § 523(a)(2)(A)

11 U.S.C. § 523(a)(2)(A) provides, in pertinent part, that

> [a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition . . . .

The party seeking a determination of nondischargeability bears the burden of proving the necessary elements by a preponderance of the evidence. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

---

[2]Appellees argue in their brief that appellant is personally "liable for his own conduct even though the Contract is between [appellees] and GWBCI" [Doc. 7]. Appellant does not contest that issue in either his initial brief [Doc. 5] or his reply brief [Doc. 8]. Moreover, the Bankruptcy Court explicitly addressed this issue in its ruling, and found it to be uncontested:
> [I]t is undisputed that all actions complained of by [appellees] are attributable directly to [appellant] in his conduct of business under [GWBCI], and [appellant] does not attempt to use the [GWBCI] corporate veil to escape liability . . . ." [Doc. 1-12].

Accordingly, this Court need not address this issue here.

5

To satisfy the burden of proof under § 523(a)(2)(A), appellees must prove by a preponderance of the evidence:

(1) That appellant obtained money, property, or services through material misrepresentations which appellant knew were false or were made with gross recklessness;

(2) That appellant intended to deceive appellees;

(3) That appellees justifiably relied upon appellant's false representations; and

(4) That their reliance was the proximate cause of their loss.

*Id.* at 280-81. Section 523(a)(2)(A) is construed strictly against the party seeking a determination of nondischargeability. *Id.* at 281.

The Bankruptcy Court found that appellees satisfied their burden with respect to each of these four elements. This Court evaluates whether the Bankruptcy Court committed clear error in finding for appellees on each element.

### 1. Obtaining Money, Property, or Services Through Material Misrepresentations Which Appellant Knew Were False or Were Made with Gross Recklessness

To prevail on the first element of their claim, appellees must prove that appellant obtained money, property, or services through material misrepresentations which appellant knew were false or were made with gross recklessness. "Material misrepresentations" are "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003)

(quoting *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1470 (9th Cir. 1996)).

The Bankruptcy Court considered this issue in detail in its opinion, noting first that it was "undisputed and, in fact, stipulated" that appellant represented to appellees the purpose of the $60,000.00 payment made on May 19, 2006.[3] Paragraph 4 of the parties' stipulation agreement indicates that appellant told appellees that "there were large upcoming expenses" and that he "needed the monies to pay for materials and/or to pay subcontractors" on appellees' project [Doc. 1-10]. The Bankruptcy Court went on to explain, however, that at the time appellant deposited appellees' $60,000.00 into his checking account, the account balance was $25,835.13. Deposit of appellees' $60,000.00 thus brought the total balance to $85,835.13. Later that day, three bank drafts totaling $61,904.00 were issued by appellant in payment of invoices attributable to expenses incurred on construction projects unrelated to appellees' project.[4] The account balance at the end of the day on May 19, 2006, was $23,931.13.[5]

The Bankruptcy Court then found that two more drafts, both dated May 19, 2006, cleared appellant's account on May 22, 2006, leaving a closing balance on May 22 of $9,581.13. On May 23, 2006, four more drafts dated May 19, 2006 cleared appellant's

---

[3] All findings referenced herein are reflected in the opinion of the Bankruptcy Court [Doc. 1-12] unless otherwise indicated.

[4] One additional draft for $100.00 also cleared appellant's account on May 19. It was not established when or to whom that draft was issued.

[5] The Bankruptcy Court opinion erroneously lists this figure as "$23,391.13."

7

account, leaving a closing balance on May 23 of $1,358.23.[6] No deposits other than appellees' $60,000.00 were made to appellant's account between May 19, 2006 and May 23, 2006.

The Bankruptcy Court considered all of this evidence in determining that appellant obtained the $60,000.00 May 19, 2006 payment from appellees by representing to them that appellant intended to use that $60,000.00 for expenses related to appellees' project, when in fact appellant knew that he planned to use that $60,000.00 to pay expenses wholly unrelated to appellees' project. The evidence in the record fully supports this determination. Accordingly, this Court finds that the Bankruptcy Court committed no error in finding for appellees on the first element of their claim.

2. **Intent to Deceive**

To prevail on the second element of their claim, appellees must prove that appellant intended to deceive appellants through his misrepresentation. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Haney*, 291 B.R. at 765-66 (quoting *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001)). The bankruptcy court "must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.'" *Haney*, 291 B.R. at 766 (quoting *Wolf v. McGuire (In re*

---

[6]As on May 19, the date of issuance and the payee of one of these drafts, for $272.90, were not established at trial.

*McGuire)*, 284 B.R. 481, 492 (Bankr. D. Colo. 2002)). Any benefit of the doubt must be resolved in favor of the debtor. *XL/Datacomp v. Wilson (In re Omegas Group)*, 16 F.3d 1443, 1451 (6th Cir. 1994).

In their complaint, appellees invoke Tennessee Code Annotated § 66-11-140, which provides that:

> use of the proceeds [of payments made to a contractor] . . . for any purpose other than either payment pursuant to written agreement between the parties or in accordance with the allocation of costs and profits under generally accepted accounting principles for construction projects shall be prima facie evidence of intent to defraud.

Notably, "[u]se of a single business bank account for multiple projects shall not be evidence of intent to defraud. *Id.* This presumption is not considered in determining dischargeability to the extent it conflicts with federal law. *In re Mettetal*, 41 B.R. 80, 87 (Bankr. E.D. Tenn. 1994).

The Bankruptcy Court made two related findings on the issue of intent to deceive, neither of which is clearly erroneous. First, after weighing all the evidence, it found that appellant never intended to use the $60,000.00 he procured from appellees to pay for expenses related to appellees' project. Relying primarily on the timing of the deposits and withdrawals into and out of appellant's bank account, the Bankruptcy Court found instead that appellant's representation was "nothing more than a ploy" by appellant to induce

9

appellees into providing him with the funds necessary to pay suppliers who were, in appellant's words, "yell[ing] the loudest."[7]

Second, the Bankruptcy Court found that, even were appellant correct in calculating the value of his labor on appellees' project after the May 19, 2006 payment, it would do nothing to vitiate appellant's intent to deceive appellees for the purposes of the statute. Appellant knowingly obtained the $60,000.00 payment from appellees, not to pay expenses related to their project, but to pay past-due invoices on jobs "wholly unrelated" to appellees' project. The Bankruptcy Court stated this finding in the plainest of terms: "The falsity of [appellant's] representation to [appellees] that he needed the second $60,000.00 to pay expenses on their project is irrefutable" [Doc. 1-12]. Accordingly, this Court finds that, even giving the benefit of the doubt to appellant, the Bankruptcy Court committed no error in finding for appellees on the second element of their claim.

### 3. Justifiable Reliance on Appellant's False Representations

To prevail on the third element of their claim, appellees must prove that they actually relied on appellant's representations and, based upon the facts and circumstances known to them at the time, that their reliance was justifiable. *Haney*, 291 B.R. at 767. A creditor will

---

[7]It is important here not to mischaracterize the reasons the Bankruptcy Court provides for its ruling on this point. The fact that appellant used only one bank account for multiple projects does not suffice, by itself, to evidence intent to defraud. Instead, the fact that appellant represented to appellees that he intended to use their $60,000.00 to pay for expenses related to their project; that he drew upon these funds in order to pay expenses unrelated to appellees' project in such close temporal proximity to depositing these funds; and the fact that this was all coupled with the failure of appellant's business, together supplied the basis on which the Bankruptcy Court made its finding on the intent element.

10

be found to have justifiably relied on a representation even where that creditor "might have ascertained the falsity of the representation had he made an investigation." *Id.* (quoting *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001).

The Bankruptcy Court found that appellees were justified in relying upon appellant's representations. At trial, appellees testified that they believed appellant to be trustworthy and easy to work with, and that they had chosen him to build their home after interviewing him and others in January 2006. Appellee Dr. Thomas M. Koenig testified that appellees had discussed with appellant the number of homes he had previously constructed, along with the number of homes he currently had under construction, prior to entering into their January 2006 contract. Dr. Koenig also testified that appellant represented to appellees that he was "quite experienced" in building homes the size of appellees' home. Appellees both testified that appellant had assured them prior to their making the May 19, 2006 payment that these funds were needed to complete their job. Finally, both appellees testified that neither of them had any significant problem with appellant prior to making the May 19, 2006 payment.

The evidence in the record fully supports the Bankruptcy Court's determination that appellees were justified in relying upon appellant's representations. Accordingly, this Court finds that the Bankruptcy Court committed no error in finding for appellees on the third element of their claim.

### 4. Proximate Cause

To prevail on the final element of their claim, appellees must prove that their reliance on appellant's misrepresentation was the proximate cause of their loss. This requires a "direct link between the alleged fraud and the creation of the debt." *Haney*, 291 B.R. at 768. There is no question that, had appellees not relied upon the misrepresentations of appellant, appellees would not have made the May 19, 2006 payment. Accordingly, this Court finds that the Bankruptcy Court committed no error in finding for appellees on the fourth element of their claim.

In sum, this Court finds that the Bankruptcy Court committed no error in finding that appellees satisfied their burden of proof with respect to each of the elements of their § 523(a)(2)(A) claim. Accordingly, this Court will affirm the Bankruptcy Court's decision, and dismiss appellant's claim with respect to § 523(a)(2)(A).

### B. Whether the Bankruptcy Court Erred in Finding that Appellees Were Entitled to Judgment Under 11 U.S.C. § 523(a)(6)

Because this Court finds no clear error in the Bankruptcy Court's judgment with respect to appellant's claim under 11 U.S.C. § 523(a)(2)(A), it need not consider appellant's claim under 11 U.S.C. § 523(a)(6).[8] For the reasons provided below, however, this Court will dismiss that claim as well.

---

[8] Appellees can establish nondischargeability under either § 523(a)(2)(A) or (a)(6); they need not establish nondischargeability under both in order to recover from appellant.

12

11 U.S.C. § 523(a)(6) provides, in pertinent part, that

[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The party seeking a determination of nondischargeability bears the burden of proving the necessary elements by a preponderance of the evidence. *Rembert*, 141 F.3d at 281. To prevail under § 523(a)(6), appellees must prove by a preponderance of the evidence the existence of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 63 (1998). It is insufficient that a reasonable debtor "should have known" that his conduct risked injury to others. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 466 n.10 (6th Cir. 1999)). Rather, the debtor must "will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.*

"An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury." *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007). The bankruptcy court is required to look into the debtor's mind subjectively in order to determine whether a debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act. *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). "An act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "'Malicious' acts do 'not require ill-will or specific intent to do harm.'" *Id.* However,

13

"[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." *Fox*, 370 B.R. at 119.

In their complaint, appellees allege conversion of their money as the injury at issue [Doc. 1-1]. Under Tennessee law, conversion is an intentional tort requiring proof that a party appropriated another's property for his own use by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property. *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). An act of conversion may constitute willful and malicious injury if the debtor intended to cause the harm or was substantially certain that such harm would occur. *Gibbs v. Nevels (In re Nevels)*, 2007 Bankr. LEXIS 2403, at *26 (Bankr. E.D. Tenn. July 9, 2007).

In making its "willfulness" and "maliciousness" findings, the Bankruptcy Court considered all of the evidence catalogued *supra* Part IV.A, as well as appellant's "obvious financial distress," including the infusion of personal funds he made into GWBCI and the money he borrowed from his mother to help keep his business afloat. The Bankruptcy Court found appellant's actions to be "willful" because he obtained the May 19, 2006 payment from appellees not intending to use it for the reasons he represented to the appellees. The Bankruptcy Court considered this sufficient evidence either of appellant's intent to convert appellees' funds to his own use, or of a belief on the part of appellant that the conversion was substantially certain to result from his act. This Court finds no error in the Bankruptcy Court's judgment.

Based upon a consideration of the same evidence, the Bankruptcy Court found appellant's actions to be "malicious" because appellant undertook them in conscious disregard of his duties to appellees without just cause or excuse. This Court finds no clear error in the Bankruptcy Court's judgment in finding that appellant's actions were taken maliciously.

The Bankruptcy Court committed no error in finding that appellees satisfied their burden of proof with respect to each of the elements of their § 523(a)(6) claim. Accordingly, this Court will affirm the Bankruptcy Court's decision, and dismiss appellant's claim with respect to § 523(a)(6).

**C.   Whether the Bankruptcy Court Permitted Appellees to Recover on Facts and Theories They Did Not Plead, and if So, Whether the Court Was in Error in Doing So**

Finally, appellant argues that appellees were permitted to proceed at trial with proof of fraud that did not appear in appellees' complaint. Appellant, however, provides few facts to narrow the scope of this argument. This Court thus bases its review on appellant's objection to appellees' motion to amend their complaint and on the objections appellant's counsel raised at trial.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," but that "[t]he court should freely give leave when justice so requires." This Rule further provides that:

> [i]f, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the

15

Case 3:08-cv-00411-TAV-CCS   Document 10   Filed 09/30/09   Page 15 of 19   PageID #: 283

merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.

Fed. R. Civ. P. 15(a)(2). This Rule applies to adversarial bankruptcy proceedings by way of Federal Rule of Bankruptcy Procedure 7015.

At trial, appellant's counsel argued that appellees' original complaint made only one allegation of fraud, which was based upon the belief that appellant performed no work on appellees' project after appellees made the May 19, 2006 payment [Doc. 1-13, pp. 9-10]. Appellant's counsel raised a standing objection to any offer of proof contradicting that claim, grounded in part on the Bankruptcy Court's previous denial of appellees' motion to amend their complaint [Doc. 1-13, pp. 9-10].

Appellant takes principal issue with two variations on appellees' complaint, evidence of which was offered at trial: first, that appellant represented to appellees that he intended to place their May 19, 2006 $60,000.00 payment in a segregated account; and second, that appellant did perform some work on their home after he received the May 19, 2006 payment. As discussed below, because this evidence may have aided in presenting the merits, and because none of this evidence prejudiced appellant, the Bankruptcy Court did not err in admitting it at trial. Accordingly, this Court will affirm the Bankruptcy Court's decision, and dismiss appellant's claim as to whether appellees were permitted to recover on facts and theories they did not plead.

16

### 1. The Segregated Account

In their original complaint, appellees made no allegation that appellant represented to them that he intended to segregate their May 19, 2006 $60,000.00 payment [Doc. 1-1]. In their proposed amended complaint, however, appellees alleged that appellant "told [appellees] their payments would be deposited to a separate account, but no separate account was set up for [appellees'] payments" [Doc. 1-5]. While the Bankruptcy Court denied appellees' motion to amend their complaint as proposed [Doc. 1-9], it permitted Ms. Koenig to testify at trial that appellees' "money would be placed in a separate account" [Doc. 1-13, p. 25].

When counsel for appellant objected to this testimony at trial, on the grounds that it varied from the allegations in the complaint, the Bankruptcy Court stated: "The complaint is long gone. The complaint is a notice pleading. As far as I'm concerned, it has nothing to do with this lawsuit" [Doc. 1-13, p. 25]. The Bankruptcy Court then overruled counsel's objection [Doc. 1-13, p. 25].

This Court need not dwell on the propriety of the Bankruptcy Court's ruling on this issue at trial. It is not clear whether this evidence offers much aid in presenting the merits of the case. Regardless, appellant was not prejudiced by its admission, because the question of whether the $60,000.00 was segregated or not segregated was ultimately irrelevant to the Bankruptcy Court's decision. The Bankruptcy Court found that, even though nothing in the contract required that appellant segregate appellees' funds, appellant was nevertheless under an obligation to use appellees' funds as he represented [Doc. 1-12]. It did not matter, in other

17

words, that appellant did not segregate appellees' funds, as he may or may not have represented to them. What mattered instead was whether he used the funds as he said he would: for work on appellees' home. The Bankruptcy Court found ample evidence in the record that appellant used those funds not to pay for the construction of appellees' home, but instead to pay expenses other than those related to the construction of appellees' home. This Court finds no error in the Bankruptcy Court's decision, and notes further that even if there were error, it was harmless.

### 2. Evidence of Construction on Appellees' Home After May 19, 2006

In their original complaint, appellees represented that "[a]fter the second $60,000.00 payment [the May 19, 2006 payment] was made, [appellant] did not return to the Building Site and no more work of any substance was performed at the Building Site" [Doc. 1-1]. In their proposed amended complaint, however, appellees alleged that "[w]hen [appellees] filed their Complaint initiating this adversary proceeding, both they and [appellant] mistakenly believed no work of any substance was performed at the Building Site after the second $60,000.00 payment" [Doc. 1-5]. While the Bankruptcy Court denied appellees' motion to amend their complaint as proposed [Doc. 1-9], it permitted testimony related to construction performed on appellees' home after May 19, 2006 (Doc. 1-13, pp. 14, 21-22, 28-33, 37-41, 43, 76-78, 87-90).

This Court need not dwell on the propriety of the Bankruptcy Court's ruling on this issue at trial either. In the first place, evidence of this nature potentially offers significant aid in presenting the merits of the case. Moreover, appellant was not prejudiced by its

18

admission, because this evidence was ultimately irrelevant to the Bankruptcy Court's ruling. The Bankruptcy Court found explicitly that:

> [t]he fact that [appellant] may have incurred expenses attributable to [appellees'] project after May 19, 2006, does not alter the fact that he obtained the $60,000.00 payment only upon representing to [appellees] that he needed it to pay existing and 'large, upcoming expenses that he needed to have the money for' on their project. It is clear that [appellant] never intended to use these funds to pay [appellees'] expenses.

[Doc. 1-12]. It did not matter, in other words, whether appellant actually performed construction on appellees' home after May 19, 2006. What mattered instead was whether he used the funds as he said he would: to pay "large, upcoming expenses" on appellees' project. The Bankruptcy Court found ample evidence in the record that appellant used the funds to pay expenses other than those related to appellees' project. This Court finds no error in the Bankruptcy Court's decision, and notes further that even if there were error, it was harmless.

## V. Conclusion

For the reasons cited above, this Court affirms the opinion of the Bankruptcy Court in its entirety. Appellant's appeal will be dismissed.

An order reflecting this opinion will be entered.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE